**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON**

**ROBIN EARL SLATER,**

      **Movant,**

**v.**                                                    **Case No. 3:15-cv-15634**
                                                         **Case No. 3:12-cr-00121**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 160), his Motion to Amend and Supplement Section 2255 Motion (ECF No. 167), and his Motion for Leave to Amend Section 2255 Motion (ECF No. 170). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

On January 23, 2012, in a parking lot of a convenience store in Putnam County, West Virginia, Movant Robin Slater (hereinafter "Defendant") was approached by West Virginia State Trooper B.K. Hammontree for suspicion of driving while intoxicated. (ECF No. 179 at 1). Defendant allegedly attempted to drive off while Hammontree was standing in the open driver's-side door of the vehicle. (*Id.*) As Hammontree attempted to shift the vehicle into park, the two men struggled and Defendant bit Hammontree on the arm and

subsequently sprayed him with "Cap-Stun" pepper spray. (*Id.* at 1-2). With the assistance of others, Hammontree subdued Defendant and placed him under arrest. (*Id.* at 2).

Upon searching Defendant's vehicle, the police recovered six firearms, a quantity of cash, and ledgers revealing Defendant's involvement in a large-scale marijuana conspiracy. Following his arrest, Defendant waived his *Miranda* rights and agreed to be interviewed by the police. During that interview, Defendant admitted to his long-term involvement in marijuana trafficking. (*Id.* at 2) (footnote omitted).

Defendant was initially represented by attorney David Moye. On February 7, 2012, as a result of pre-indictment plea negotiations, Defendant agreed to plead guilty in federal court to a single-count information charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), which exposed him to a maximum sentence of ten years in prison, a three-year term of supervised release, and a fine of up to $250,000. (*Id.* at 2 and Ex. 1, "First Plea Agreement"). The First Plea Agreement contained a stipulation of facts and a waiver of Federal Rules of Evidence 410, whereby the United States would be permitted to introduce the stipulation of facts at trial or any other court proceeding, if Defendant withdrew from or breached the plea agreement. (*Id.* at 2-3 and Ex. 1 at 4, 10-11). Defendant subsequently fled the jurisdiction of the court and failed to appear for his plea hearing, thus, effectively withdrawing from his plea agreement. (*Id.* at 3).

On May 22, 2012, a federal grand jury returned a five-count indictment charging Defendant with the following offenses: one count of conspiracy to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); one count of possessing firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); one count of being a felon in possession

2

of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Three); one count of obstruction of justice, in violation of 18 U.S.C. §§ 1512(a)(2)(C) and 1512(a)(3)(B) (Count Four); and possessing firearms in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Five).  (ECF No. 179 at 3 and Ex. 2, "Indictment").  Defendant was ultimately arrested in Kentucky on or about October 3, 2012, following a high-speed chase.  At the time of his arrest, officers found two firearms and $6,000 in Defendant's vehicle.  (*Id.* at 3).

Defendant initially appeared in the United States District Court for the Eastern District of Kentucky.  On October 15, 2012, he appeared in this United States District Court for an arraignment and detention hearing, where he was represented by Lex A. Coleman, Assistant Federal Public Defender.

On December 21, 2012, Defendant executed a plea agreement in which he agreed to plead guilty to Counts One through Four of the Indictment.  In exchange, the United States agreed to dismiss Count Five and forego the filing of a recidivist information under 21 U.S.C. § 851.  (*Id.* at 3-4 and Ex. 3, "Second Plea Agreement").  Defendant's sentencing exposure as a result of the plea agreement was as follows: 5 to 40 years on Count One; a consecutive 5 years to life on Count Two; up to 10 years on Count Three; and up to 30 years on Count Four.  (*Id.* at 4).  The Second Plea Agreement also contained a stipulation of facts and a waiver of Fed. R. Evid. 410.  (*Id.* at 4 and Ex. 3 at 5-6. 9-12).

In the second stipulation of facts, Defendant agreed that he was "a long time dealer of marijuana" and had been dealing the drug since at least 2003.  Defendant further admitted that "he obtained over 10,000 KG but less than 30,000 KG [of marijuana for distribution]."  (*Id.* at 4 and Ex. 3 at 11).  He further admitted that, while collecting drug debts, he had six firearms in his possession, despite being a convicted felon.  (*Id.,* Ex. 3 at

3

11-12).  He also admitted that he had violently assaulted Trooper Hammontree by biting him on the arm and spraying him with pepper spray in the face, in order to prevent him from discovering the firearms, cash, and drug ledgers that were in the vehicle and reporting such incriminating evidence to other state or federal law enforcement officers or a court.  (*Id.*)

A plea hearing was convened on January 7, 2013.  However, at that time, Defendant advised the court that he was not prepared to go forward.  Defendant asserted that he wanted the plea agreement to cover offenses that occurred in other states; that he disagreed with the stipulated drug quantity; and that he did not understand the implications of a section 851 information.  (*Id.* at 4-5 and Ex. 4, "First Plea Hrg. Tr." at 6-9, 12-16, 19).  Among other things, the district court explained the use immunity provision of the agreement and that the filing of a section 851 information would increase his sentencing exposure for his drug conspiracy offense from 5 to 40 years to 10 to life.  (*Id.* at 5 and Ex. 4 at 15).

The Court continued the plea hearing to enable Defendant to consult with Mr. Coleman before deciding whether to go forward with his guilty plea pursuant to the Second Plea Agreement or withdraw therefrom.  (*Id.* at 4 and Ex. 4 at 19-20).  Thereafter, Mr. Coleman filed a Motion to Withdraw as Counsel, which was granted on January 17, 2013.  (*Id.* at 5; ECF Nos. 24, 25).  Sebastian M. Joy was then appointed to represent Defendant.  (ECF No. 26).

On February 12, 2013, Defendant filed a "Notice of Non-acceptance of Plea Agreement" (ECF No. 29), thus formally withdrawing from the Second Plea Agreement. (ECF No. 179 at 5 and Ex. 5, "Notice of Non-acceptance of Plea Agreement").  On April 24, 2013, Defendant filed a motion in limine seeking to preclude the United States from

using the stipulation of facts contained in the Second Plea Agreement against him.  On June 3, 2013, the Court denied the motion in limine after a hearing in which Mr. Coleman testified.  The Court found that Defendant knowingly and voluntarily executed the Second Plea Agreement.  (ECF No. 179 at 5 and Ex. 6, "Order Denying Motion in Limine").

On July 15, 2013, the United States filed an information under 21 U.S.C. § 851, alleging that Defendant had previously been convicted of two felony controlled substance offenses.  (*Id.* at 5 and Ex. 7, "Section 851 Information").  Defendant's trial was scheduled on August 13, 2013.  On the morning of trial, Defendant plead guilty to Counts One through Four of the indictment without a plea agreement.  The United States moved for the dismissal of Count Five.  (*Id.* at 5-6 and Ex. 8, "Second Plea Hrg. Trans.").  Defendant also filed a denial of the allegations in the Section 851 Information.  (*Id.* at 6 and Ex. 9, "Denial of Section 851 Information").

On November 11, 2013, Mr. Joy filed a sentencing memorandum and objections to the Presentence Investigation Report ("PSR").  (*Id.* at 6 and Ex. 10, "Def. Sentencing Mem. and Obj.")  Mr. Joy also disputed the drug quantity used to establish Defendant's base offense level on Count One.  He further argued that one of the firearms (a Beretta shotgun) was inoperable, and two others found when Defendant was arrested in Kentucky had not been proven operable.  Thus, Mr. Joy contended those guns should not be used to enhance Defendant's guideline sentencing range on Count Two.  Mr. Joy further asserted that Defendant's conduct did not create a substantial risk of serious bodily injury to Trooper Hammontree and that Defendant's conduct did not warrant a reckless endangerment enhancement.  Mr. Joy further argued for a downward variance from the guideline sentence.  (*Id.* at 6 and Ex. 10).

Defendant's sentencing hearing was held on November 18, 2013. During the hearing, Mr. Joy addressed the Defendant's various objections to the PSR and required the United States to prove the amount of marijuana attributable to Defendant as offense and relevant conduct. The United States was further compelled to demonstrate that the Beretta shotgun and the two firearms seized in Kentucky were operable and that Defendant's conduct created a substantial risk of serious bodily injury to Trooper Hammontree. Finally, the United States was required to prove that Defendant was the person who had been convicted of the prior felony offenses contained in the Section 851 Information. (ECF No. 179 at 6-7 and Ex. 11, "Sentencing Hrg. Tr.," *passim*).

Mr. Joy cross-examined the government's witnesses and introduced testimony and argument supporting Defendant's positions on these various issues. Ultimately, the Court found that the Beretta shotgun satisfied the definition of a firearm and that it and the two firearms seized in Kentucky would be included in the calculation of Defendant's guideline range for Count Two. The Court further found that Defendant's conduct created a substantial risk of bodily injury to Trooper Hammontree. However, Mr. Joy successfully persuaded the Court to lower the drug quantity to 3,000 to 10,000 KG of marijuana.

Defendant was sentenced to an aggregate sentence of 420 months in prison (360 months on Counts One, Three, and Four; and a consecutive 60 months on Count Two) followed by an aggregate term of supervised release of 13 years (eight years on Counts One, Three and Four; and a consecutive five years on Count Two). (ECF No. 179 at 7; ECF No. 123, "Judgment").[1]

---

[1] Defendant's terms of imprisonment on Counts One, Three, and Four were later reduced to 324 months, when the district court granted a Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2), in light of amendments to the controlled substance offense guidelines. (ECF No. 179 at 7 n.5; ECF Nos. 152, 158).

Defendant's Judgment was affirmed on appeal on July 8, 2014. *United States v. Slater*, No. 13-4885, 578 F. App'x 198 (4th Cir. July 8, 2014) (ECF No. 145). In his direct appeal, Defendant unsuccessfully challenged the district court's calculation of the drug weight and the application of a four-level guideline enhancement for possession of eight firearms during the offenses (based upon the inclusion of the allegedly inoperable Beretta shotgun in that calculation). The Fourth Circuit subsequently denied Defendant's petition for rehearing and rehearing en banc. (ECF No. 149). Defendant's petition for a writ of certiorari was denied by the Supreme Court on December 1, 2014, and his Judgment became final on that date. *Slater v. United States*, 135 S. Ct. 734 (2014).

Defendant filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 160) on November 30, 2015. Thereafter, on November 23, 2016, and November 20, 2017, Defendant filed two motions to amend or supplement his section 2255 motion. (ECF Nos. 167 and 170). Defendant's initial motion documents essentially assert two grounds for relief. First, he contends that his court-appointed counsel provided ineffective assistance in numerous ways. Second, he alleges prosecutorial misconduct by the United States. As noted by the United States in its response, within his claims of ineffective assistance of counsel, Defendant also contends that his guilty plea was not knowing and voluntary.

Defendant's Motion to Amend and Supplement his Section 2255 Motion (ECF No. 167), filed nearly one year after the initial motion, adds specific arguments that his counsel failed to investigate phone records of phones seized when he was arrested. Defendant contends that these phone records, which he further contends were withheld by the United States, would have shown communications between Defendant and his co-conspirators indicating that he was not as involved in the conspiracy as suggested by the

7

government, and would have demonstrated a more accurate drug quantity. (*Id.*) The Motion to Amend and Supplement further asserts that the Defendant's counsel failed to have the drug quantity found by a jury. (*Id.*)

On November 20, 2017, nearly two years after filing his initial section 2255 motion, Defendant filed another Motion for Leave to Amend his Section 2255 Motion (ECF No. 170), in which he again challenges the drug quantity determined by the district court and the four-level enhancement he received for possessing eight firearms. Defendant also appears to be challenging, for the first time, the basis for his obstruction of justice conviction under 18 U.S.C. § 1512(a)(2)(C).

Defendant claims that the United States "usurped" its jurisdiction by indicting him for a crime based upon dismissed state charges. (ECF No. 170 at 8). Defendant further appears to contend that, because Trooper Hammontree was a state law enforcement official, there was no basis to charge him under section 1512(a)(2)(C). Defendant further contends that, had his counsel effectively represented him, he would have shown the trial court that Defendant did not commit a federal offense on that basis. (*Id.* at 8-9). Defendant's Motion for Leave to Amend further asserts that he only pled guilty to the offenses charged in the indictment because the government threatened to pursue a life sentence if he proceeded to trial. (*Id.* at 9).

On July 6, 2018, the United States filed a Response to Defendant's Section 2255 Motion and Motions to Amend and Supplement (ECF No. 179), as ordered by the undersigned. The Response indicates that most of the issues addressed in Defendant's Motions to Amend and Supplement relate back to his initial section 2255 motion and, thus, in accordance with Rule 15(c)(2) of the Federal Rules of Civil Procedure, the United

States does not object to the Court addressing the merits of the claims contained in the Motions to Amend and Supplement.  (*Id.* at 23-24).

Defendant's reply was due on September 6, 2018.  (ECF Nos. 172, 175).  On September 10, 2018, the Clerk docketed a "Response" from the Defendant (ECF No. 180) indicating that he had not received service copies of either the government's response to his section 2255 motion or Mr. Joy's affidavit that had been ordered by the court. Consequently, the undersigned granted an extension of time for Defendant's reply brief until November 1, 2018, and directed the Clerk to provide Defendant with the government's Response and the affidavits of both Mr. Joy and Mr. Coleman.  (ECF No. 181).  Thereafter, Defendant failed to file any Reply at all.  This matter is ripe for adjudication.

## ANALYSIS

### A.    Ground One- Ineffective assistance of counsel.

Defendant's initial section 2255 motion was timely filed under 28 U.S.C. § 2255(f)(1), as it was filed within one year of his Judgment becoming final.  The initial motion raises numerous claims of ineffective assistance of counsel.  Although the section 2255 motion contains 31 discrete paragraphs concerning his ineffective assistance of counsel claims, the undersigned agrees with the government that the claims can be broken down into three overarching categories: (1) counsel's failure to adequately advise Defendant regarding execution of two plea agreements containing stipulations of facts, and to enter a guilty plea that was allegedly not knowing and voluntary; (2) counsel's failure to prepare and effectively present or attack certain evidence pertinent to the calculation of his advisory sentencing guideline ranges; and (3) counsel's failure to adequately attack the Section 851 Information.  (ECF No. 179 at 9).

The Supreme Court addressed the right to effective assistance of counsel as guaranteed by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  *Id.* at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  *Id.* at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.  This inquiry is directed at whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "The question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment."  *Id.* at 88.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the

claim on the ground of lack of prejudice. *Id.* at 697. Using this standard, the undersigned will address Defendant's various claims of ineffective assistance of counsel.

### 1.    *Ineffective assistance of counsel during plea stage*

Defendant generally asserts that his counsel failed to adequately investigate and ascertain whether the government's case against him was credible and to keep him advised about the status of his case. (ECF No. 160 at 14, 16, ¶¶ 1, 2, and 21). However, he further specifically contends that his counsel allowed him to enter a guilty plea that was not knowing and voluntary and provided ineffective assistance during the plea process. Paragraphs 12, 14, 15, 22-26 of Ground One of the section 2255 motion appear to challenge the voluntariness and intelligence of Defendant's guilty plea and counsel's alleged failure to properly advise him concerning the effect of certain prior plea agreement provisions. (ECF No. 160 at 15-16).

In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court reiterated that the Sixth Amendment right to effective assistance of counsel applies during the plea negotiation stage of the criminal process. The Court confirmed that, "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* at 163. Thus, a defendant who pled guilty must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Defendant has alleged that each of the attorneys who represented him during the plea stages of his criminal proceedings provided ineffective assistance. The undersigned will address the conduct of each attorney separately.

a.    *David Moye*

In paragraph 23, Defendant summarily contends that his first counsel, David Moye, allowed him to sign a plea agreement without investigating and researching the case for possible defenses.  (ECF No. 160 at 16, ¶ 23).  In response to this assertion, the government's brief states:

> Even if defendant correctly asserts that David Moye failed to adequately investigate and research the case prior to defendant executing the first plea agreement, he fails to satisfy either prong of *Strickland*.  Under the terms of the first plea agreement, defendant would have faced a maximum sentence of ten years – far below the 32 years he ultimately received.  Moye recognized the substantial benefits of accepting the pre-indictment plea offer and reasonably counseled defendant to accept the agreement.  It was defendant's flight from prosecution that affected the outcome of the proceeding and not Moye's counsel.

(ECF No. 179 at 16).  Defendant has not rebutted this argument.

Defendant fails to realize that the First Plea Agreement negotiated by Mr. Moye placed him in the best possible position, in light of the firearms, cash, and drug ledgers found in his vehicle when he was arrested, and the admissions he made in his post-arrest statement.  Had Defendant appeared and entered into a guilty plea pursuant to that agreement, he would have been exposed to a maximum sentence of ten years in prison and a three-year term of supervised release.

However, it was Defendant's own conduct in failing to appear for the plea hearing and absconding from the jurisdiction of this court that allowed his subsequent indictment on additional charges and greatly-increased sentencing exposure.  Moreover, Defendant's conclusory allegations in his section 2255 motion fail to demonstrate that Mr. Moye provided any inaccurate advice to Defendant concerning the First Plea Agreement or his likelihood of presenting a more successful defense to the initial charges.  Thus, the

undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to demonstrate that Mr. Moye provided ineffective assistance of counsel herein.

b.    *Lex A. Coleman*

The section 2255 motion further asserts that Mr. Coleman provided ineffective assistance of counsel because he allowed Defendant to sign a plea agreement "under false pretenses" when he indicated that he would hold the executed Second Plea Agreement until he could get the government to agree to certain changes sought by Defendant, and then failed to obtain such changes.  Defendant also appears to allege that his counsel (read to be both Mr. Coleman and Mr. Joy) failed to obtain discovery material that would have allowed him to make a knowing and voluntary guilty plea, and failed to advise him that, if he signed a plea agreement and later moved to withdraw it, the provisions of the plea agreement (*i.e.*, the stipulation of facts) could be used against him at a subsequent trial. (ECF No. 160 at 16, ¶¶ 22, 24-26).  Finally, Defendant contends that his counsel failed to advise him of the effects of the filing of a Section 851 Information.  (*Id.*, ¶ 29).

Specifically concerning Mr. Coleman's conduct, the government asserts:

> Defendant's claims against AFPD Lex Coleman were already considered and rejected by the district court, and defendant failed to raise them on direct appeal.  At the aborted plea hearing on January 7, 2013, the court conducted an *in camera* hearing with defendant and Coleman. Exhibit 4 – Transcript of Aborted Plea Hearing.  During that hearing, the court made certain that Coleman had explained the plea agreement to defendant, the court explained again the admissibility of the stipulation of facts and the effect of a Section 851 Information.  *Id.* at 12-19.  In denying defendant's subsequently-filed motion in limine to preclude the United States from introducing the stipulation of fact, the court discredited defendant's claim that Coleman promised to obtain changes to the agreement and specifically found that defendant had knowingly and voluntarily signed the plea agreement.  Exhibit 6 – Order Denying Motion in Limine.
>
> Further, in response to this Court's Order, AFPD Coleman submitted a sworn affidavit refuting defendant's claims.  Exhibit 13 – Coleman

> Affidavit. Coleman stated that he spent considerable time with defendant going over the plea agreement and pertinent discovery, explaining the benefits of the plea agreement, answered defendant's questions, and informed him of the nature and ramifications of the Section 851 Information. *Id.* Coleman's affidavit is consistent with the district court's finding that defendant knowingly and voluntarily executed the plea agreement.

(ECF No. 179 at 17-18). The government further asserts that Defendant failed to appeal the district court's findings concerning his knowing, voluntary and intelligent execution of the Second Plea Agreement and the findings with respect to Mr. Coleman's conduct. Accordingly, the government asserts that such claims are "procedurally defaulted" in this section 2255 proceeding. *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998). (*Id.* at 18). The government's Response further states:

> Defendant's motion with respect to AFPD Coleman, having provided no new evidence, seeks to convince the district court to reverse its findings that defendant was advised properly, and that he knowingly and voluntarily executed the agreement. In the absence of additional evidence, defendant cannot satisfy the *Mikalajunas*[2] or *Strickland* tests, and his motion should be denied and dismissed.

(*Id.* at 18-19). Again, Defendant has failed to rebut the government's arguments.

Upon review of the section 2255 motion documents and the government's Response thereto, as well as Mr. Coleman's affidavit (ECF No. 179, Ex. 13), the transcript of the aborted plea hearing on January 7, 2013 (ECF No. 179, Ex. 4), and the transcript of the pre-trial motions hearing addressing Defendant's motion in limine (ECF No. 137), the undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to show that his execution of the Second Plea Agreement was not knowing, voluntary, and intelligent, and has further failed to show that Mr. Coleman's conduct in negotiating the

---

[2] *See United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) (discussing the requirements of showing "cause" and "prejudice" or a "miscarriage of justice" to overcome the procedural default of a claim on collateral attack).

Second Plea Agreement and advising Defendant concerning the execution thereof, fell below an objective standard of reasonableness or resulted in undue prejudice to Defendant. Had Defendant gone forward with a guilty plea pursuant to the Second Plea Agreement, he would have avoided the statutory sentencing enhancement created by the government's filing of the Section 851 enhancement, among other potential benefits, compared to the sentence he ultimately received.

Again, it was Defendant's own refusal to move forward with a guilty plea pursuant to the Second Plea Agreement that was detrimental to his defense. Moreover, a review of the hearing transcripts and Mr. Coleman's affidavit demonstrates that both Mr. Coleman and the district court advised Defendant that the stipulation of facts contained in the Second Plea Agreement could be used against him and further explained the effect of the filing of a Section 851 Information.

### c.    *Sebastian M. Joy*

Finally, Defendant claims that Mr. Joy provided ineffective assistance of counsel with respect to the guilty plea Defendant ultimately entered, without a plea agreement, on the morning of trial. Specifically, Defendant contends that his guilty plea was not knowing and voluntary and that he was "forced" to enter into the plea because his counsel was not adequately prepared for trial and failed to move for a continuance in order to secure the attendance of certain witnesses. (ECF No. 160 at 15, ¶¶ 12-15).

Mr. Joy's affidavit contradicts these assertions, stating that he was well-prepared to go to trial that day, as further evidenced by documents of record, including jury instructions and proposed voir dire, but Defendant advised him that morning that he wished to plead guilty. (ECF No. 176 at 2-3). Additionally, the government's Response states:

> At the plea hearing held on August 13, 2013, the district court explained the potential penalty of the guilty plea, the trial and other rights defendant gave up by pleading guilty, made certain that there was a factual basis for the guilty plea, made certain defendant understood the charges against him and what the government would have to prove at trial, and found that defendant was competent and capable of entering an informed plea, that the plea was voluntary, and that defendant understood the nature of the charges, the consequences of pleading guilty, and the constitutional and other rights defendant waived by pleading guilty.  Exhibit 8 – Transcript of Plea Hearing.
>
> Defendant's claim that counsel was ineffective during this process directly contradicts the district court's findings after speaking with defendant in person during the plea hearing.  Consequently, defendant's motion is without merit and should be denied and dismissed.

(ECF No. 179 at 19).

"Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney Gen.*, 956 F.2d 1290, 1299 (4th Cir. 1992); *see also Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) ("absent clear and convincing evidence to the contrary," defendant is bound by statements made under oath at Rule 11 hearing).  The plea colloquy herein demonstrates that Defendant was fully aware of the terms and conditions of his guilty plea, and he acknowledged that he was knowingly and voluntarily entering into the same.  Defendant further acknowledged that he was fully satisfied with the performance and assistance of his counsel, and he has not demonstrated, by clear and convincing evidence, that he should not be bound by his representations.  (ECF No. 179, Ex. 8, *passim*).

In *United States v. LeMaster*, 403 F.3d 216, 221 (4th Cir. 2005), the Fourth Circuit held that, absent extraordinary circumstances, a district court is not required to conduct an evidentiary hearing concerning a challenge to a guilty plea, where the defendant's allegations contradict the defendant's sworn statements made during a proper Rule 11 colloquy.  *Id.*  Rather, the district court may find that such allegations are "palpably

incredible" and "patently frivolous and false." *Id.* Moreover, Defendant failed to challenge the voluntariness and sufficiency of his guilty plea on appeal.

The undersigned first proposes that the presiding District Judge **FIND** that Defendant's guilty plea was knowing and voluntary and that his allegations of ineffective assistance of counsel during the plea stage of his proceedings are directly contradicted by his sworn statements during his plea colloquy, which are conclusively established by the record. Thus, Defendant's claim that his guilty plea was not knowing and voluntary lacks merit. The undersigned further proposes that the presiding District Judge **FIND** that Defendant has not established a Sixth Amendment violation based upon Mr. Joy's conduct during the plea process.

In sum, Defendant is not entitled to any relief on Ground One of his section 2255 motion concerning the conduct of his counsel during the plea stage of his criminal proceedings.

## 2. *Ineffective assistance of counsel at sentencing stage*

In Ground One of his section 2255 motion, as expanded in his Motion to Amend and Supplement Motion (ECF No. 167) and his Motion for Leave to Amend Section 2255 Motion (ECF No. 170), Defendant also contends that Mr. Joy also provided ineffective assistance of counsel during the sentencing stage of his proceedings. First, Defendant contends that Mr. Joy failed to interview and call witnesses and present other evidence that would have disputed the government's assertions concerning the length and depth of Defendant's involvement in the alleged drug conspiracy. Defendant contends that this evidence would have affected the drug weight used to calculate his resulting guideline range on Count One. (ECF No. 160 at 14-15, ¶¶ 3, 4, 8, 9, 10, 13, 16, 30, and 31).

Second, Defendant asserts that Mr. Joy failed to interview and call witnesses to rebut the government's assertion that Defendant placed Trooper Hammontree at substantial risk of serious bodily injury and failed to defend against the corresponding sentencing enhancement he received under USSG 3A1.2(c)(1).  (*Id.* at ¶¶ 5, 6, 13, and 20).  Third, Defendant claims that Mr. Joy failed to object to the adequacy of the Section 851 Information, including an objection on the basis that the predicate offenses were not within the appropriate time period.[3]  (*Id.*, ¶¶ 27-29).  Finally, Defendant summarily asserts that Mr. Joy failed to properly research and understand the Sentencing Guidelines in order to make proper and coherent objections to his guideline calculations.  (*Id.*, ¶¶ 17-19).

The government's Response largely focuses on Defendant's contentions concerning the Section 851 Information.  The Response states in pertinent part:

> In this claim, defendant argues that counsel failed to adequately explain Section 851 and its effect on his sentence, and that counsel did not attack the validity of the convictions used to increase his sentence.
>
> A defendant convicted of a federal drug trafficking offense faces increased penalties if he or she has been previously convicted of a felony drug trafficking offense.  In order for the increased sentence to apply, the United States must seek the enhanced penalty and notify a defendant of its intent to do so by filing an Information pursuant to 21 U.S.C. § 851.  The Section 851 Information must set forth the prior convictions so that a defendant has the opportunity to deny the allegations in the Information or raise any claim that a prior conviction is invalid as a predicate offense for the increased sentence.

---

[3]  Here, the undersigned believes that Defendant may be relying upon a 15-year time limit contained in USSG § 4A1.2(e) used for calculation of criminal history points under the Guidelines, which is not applicable to this issue.  The undersigned further notes that Defendant's 1986 and 1988 prior convictions appear to fall outside the five-year time period in which a defendant may challenge the validity of the prior convictions, as set forth in 21 U.S.C. § 851(e) ("No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.").  Thus, it does not appear that Defendant could have challenged the validity of his prior convictions being used under section 851.

With regard to defendant's claim that counsel did not explain the Information or its effect on his sentence, the United States incorporates its response to the previous sections. The record clearly demonstrates that counsel and the district court explained the Section 851 Information to defendant prior to his withdrawal from the second plea agreement and his decision to plead guilty on the morning of trial.

Defendant's claim that counsel failed to adequately attack the validity of the prior convictions *may* have some validity as to his 1986 conviction of possession with intent to deliver marijuana in the Newton Superior Court, Kentland, Indiana. A court must inform a defendant of his constitutional right to counsel. *See Gideon v. Wainright*, 372 U.S. 335 (1963). The conviction record submitted by defendant as Exhibit I to his second amended petition shows that he was not represented by counsel in that case. ECF No. 170. However, defendant has not submitted any evidence that the court failed to inform him of his right to counsel. In theory – albeit unlikely, counsel might have been able to develop evidence that the court failed to inform defendant of his right to counsel.

Even if defendant's Indiana conviction was constitutionally invalid, he has presented no evidence that renders invalid his 1988 conviction of aiding and abetting another in trafficking marijuana in the Court of Common Pleas, Athens County, Ohio. He argues that Ohio Revised Code 2925.03 is more broad than the federal definition of felony drug offense. Defendant cites recent litigation over difference between state and federal definitions of "controlled substances." Unlike the controlled substance analogs typically at issue in those cases, defendant's conviction relates to marijuana trafficking. There are no different definitions of marijuana, and defendant's argument is misplaced.

(ECF No. 179 at 20-22).

The government further asserts that, even if the district court were to find that Mr. Joy's conduct surrounding the handling of the Section 851 Information fell below an objective standard of reasonableness, Defendant cannot demonstrate any actual prejudice therefrom because the Section 851 Information had no bearing on his 27-year sentence, which fell below the 40-year statutory maximum under 21 U.S.C. § 841(b)(1)(B), without the Section 851 enhancement. The undersigned agrees that, with respect to the sentence he received, Defendant cannot establish any actual prejudice as a result of the application of the Section 851 enhancement.

The government's Response further contends that, to the extent that Defendant's section 2255 motion and his motions to amend and supplement address issues concerning the drug weight and the number of firearms used to enhance his sentence, he is precluded from launching a collateral attack on those bases because he litigated those matters in his direct appeal. *See United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)). (ECF No. 179 at 11-12). Nonetheless, the Response further asserts:

> Even if defendant were permitted to collaterally attack the marijuana weight found by the district court, he would nevertheless fail to satisfy the *Strickland* standard. In this case, counsel vigorously challenged the evidence and ultimately persuaded the district court to discount ninety percent of the marijuana attributed to him in the presentence investigation report. Counsel's tactical decisions at the sentencing hearing did not fall below an objective standard of reasonableness. The fact that counsel was successful further undermines defendant's argument and makes it a virtual impossibility that the outcome would have been different if counsel had pursued each of defendant's suggested tactics.

> Removing the drug weight and firearm issues settled on direct appeal, defendant is left with his allegations that counsel was ineffective in challenging the USSG § 3A1.2(c)(1) enhancement for creating a substantial risk of serious bodily injury. Defendant specifically argues that counsel 1) should have interviewed two individuals who defendant claims would have contradicted evidence that his vehicle "moved" and thus created the risk, 2) failed to object to one of those individuals remaining in the courtroom during Trooper Hammontree's testimony, and 3) failed to review surveillance footage from the convenience store which defendant alleges would have proven that he did not attempt to injure the officer.

> During the sentencing hearing, the district court heard the testimony of both Trooper Hammontree and defendant. Defendant testified that he shifted his vehicle into reverse and bit Trooper Hammontree as he shifted it into park and tried to remove the keys from the ignition. Exhibit 11 at 97-101. Defendant stated that his vehicle did not move. *Id.* at 102. The court found that defendant's conduct created a substantial risk of serious bodily injury in that he bit the officer while trying to drive away. *Id.* at 103. The court found that the risk was created when an officer "is trying to do his job and he is having to force himself into a vehicle to stop it from moving where someone is trying to escape the officer." *Id.*

(ECF No. 179 at 13-14). Based upon Defendant's admissions, the government contends that "[e]vidence of whether and how far the vehicle moved was of little relevance to the court's finding" and that Defendant's testimony, alone, was sufficient to support the enhancement. (*Id.* at 14). These assertions and findings have not been disputed or rebutted by Defendant.

The undersigned agrees that Defendant cannot show that Mr. Joy's conduct fell below an objective standard of reasonableness on this basis or that Defendant suffered undue prejudice as a result thereof. Moreover, Defendant's bald assertions that Mr. Joy did not adequately review the guidelines and make coherent objections fail to sufficiently establish any Sixth Amendment violation.[4]

For all of these reasons, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not established a violation of his Sixth Amendment rights due to Mr. Joy's conduct in relation to the sentencing hearing. Therefore, he is not entitled to any relief on Ground One of his section 2255 motion, or the additional assertions in his motions to amend and supplement, as they pertain to sentencing issues.

---

[4] Defendant's Motion to Amend and Supplement (ECF No. 167 at 1) also makes a conclusory assertion that his "Attorney failed to have Drug Quantity found by a Jury, when it effects [sic; affects] a Maximum Penalty." However, as noted by the government's Response:

> [D]rug quantities which increase the statutory maximum sentence must either be proven to a jury beyond a reasonable doubt or admitted by guilty plea. *Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, factual determinations which increase a sentence under the Sentencing Guidelines do not implicate *Apprendi* so long as the sentence does not exceed the statutory maximum. *United States v. Kinter*, 235 F.3d 192, 201 (4th Cir. 2000). In this case, the district court did not make findings which increased defendant's sentence beyond the statutory maximum.

(ECF No. 179 at 12 n.7). The undersigned further notes that Defendant was sentenced after *United States v. Booker*, 543 U.S. 220 (2005), pursuant to an advisory guideline scheme. Thus, to the extent that this claim is even properly before the court, the undersigned proposes that the presiding District Judge **FIND** that there was no Sixth Amendment violation based upon the court's findings or Mr. Joy's conduct in relation thereto. The government further notes that Defendant subsequently benefitted from the change in the sentencing guideline levels for controlled substance offenses when his sentence of imprisonment on his thereon was reduced to 324 months.

### B.    Ground Two - prosecutorial misconduct.

In Ground Two of his section 2255 motion, Defendant summarily contends that his due process rights were violated because the United States failed to comply with its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and the Jenks Act, 18 U.S.C. § 3500, by withholding materially exculpatory or impeachment evidence relevant to the drug weight issues.  (ECF No. 160 at 17).  In his Motion to Amend and Supplement, Defendant elaborates on this contention by specifically asserting that the government withheld exculpatory evidence in the form of phone records from seven cell phones seized when Defendant was arrested, which he contends are relevant to determining drug quantity and the time frame of the conspiracy.  He further accuses the government of intentionally withholding such evidence in order to mislead the court on drug quantity, but also suggests that the government negligently failed to disclose the materials.  (ECF No. 167 at 7).

The government's Response contends that, "even if true, [these claims] relate to the district court's findings with regard to the quantity of marijuana attributed to defendant as offense and relevant conduct," an issue that was fully litigated on direct appeal.  Consequently, the government contends that Defendant cannot re-litigate that issue in this collateral attack.  (ECF No. 179 at 22-23).  Defendant failed to dispute this contention.

The undersigned proposes that the presiding District Judge **FIND** that Defendant is barred from pursuing this claim, which was previously litigated in his direct appeal, or to the extent that any aspect of this claim was not addressed in his direct appeal, it is waived in this collateral attack.  *See Boeckenhaupt, supra*, 537 F.2d at 1183; *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("we have long and consistently affirmed

that a collateral challenge may not do service for an appeal."); *Stone v. Powell*, 428 U.S. 465 477 n.10 (1976) ; *United States v. Emanuel*, 869 F.2d 795 (4th Cir. 1989) (alleged non-constitutional errors not raised on direct appeal are conclusively waived and alleged constitutional errors are waived absent a showing of cause and prejudice).

### C.    Additional claims asserted in Motion for Leave to Amend.

In his Motion for Leave to Amend (ECF No. 170), Defendant reiterates his contentions that the district court erred in calculating the drug quantity and applying the four-level enhancement for possession of eight firearms.  Because those issues were determined on appeal, the undersigned will not further re-hash them herein.  However, the Motion for Leave to Amend also appears to assert, for the first time in any proceedings, a challenge to Defendant's conviction for obstruction of justice under 18 U.S.C. §§ 1512(a)(2)(C) and (a)(3)(B) on the basis that Trooper Hammontree was not a federal law enforcement officer.  His Motion for Leave to Amend states in pertinent part:

> In the instant case, Petitioner asserts that the Asst. U.S. Attorney Lowe usurped his and the Government's Jurisdiction by charging and "indicting" him with "Obstruction of Justice" using the "Dismissed" State charges involving "State Police" to charge Federal violations of the Law.  No Federal Officers were present or involved in Petitioner's arrest on January 23, 2012, upon the "State charges" of resisting arrest and possession of firearms (6) by a convicted felon.

> As the record reflects, Petitioner was released on bond and thereafter absconded, and was arrested and charged with "resisting arrest" on 9/10/2012 in Kentucky, where the charges were "dismissed," and he was returned to custody of the Kanawha Co., W. Va. Jail, where he was Indicted on May 22, 2012 by the Government for allegedly violating the herein "argued" Federal Offenses.

> Had Counsel Effectively represented him, he would [have] investigated Federal Code of Criminal Procedure, as well as West Virginia Law would have "shown" Trial Court that under Federal Law, Petitioner had not committed a Federal Offense of "Obstruction of Justice" as charged within the Indictment, due to the irrefutable Fact that "State Trooper Hammontree" was not on loan by the State to any Federal Police agency on

23

the date of January 23, 2012, when he arrested Petitioner upon the State charges.

(ECF No. 170 at 8-9).

Based upon this argument, and additional assertions contained in Defendant's motion, it is clear that Defendant misunderstands the scope of the applicable statute for his obstruction of justice offense and the basis for his offense. 18 U.S.C. § 1512(a)(2)(C) provides in pertinent part:

> (2) Whoever uses physical force, or the threat of physical force against ***any person***, or attempts to do so with the intent to... (C) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ."

18 U.S.C. § 1512(a)(2)(C) (Emphasis added). The term "any person" does not modify federal law enforcement officials or judges. Thus, the person against whom force is used or threatened need not be a federal law enforcement official or judge, so long as the force is used or threatened in order to prevent that person from communicating information relating to a possible federal offense to a law enforcement official or judge.

In the instant matter, given the quantity of firearms possessed by a convicted felon, and the possession of drug ledgers and cash indicating a large-scale drug operation, it was reasonable to believe that such information would be turned over to federal law enforcement officials and the federal court for prosecution. In fact, the information was so communicated to federal officials, resulting in the initial plea agreement offered by the United States Attorney.

In his subsequent plea hearing, Defendant admitted a factual basis for his plea to this count by acknowledging to the Court that he knew he was in a vehicle in which there were guns he was prohibited from having and cash that he had obtained from the sale of

24

marijuana.  Thus, he acknowledged that, when he was resisting, he realized that there was evidence of him being a felon in possession and participation in a drug conspiracy, acts which constituted federal crimes and were sufficient to support his conviction under section 1512(a)(2)(C).  (ECF No. 179, Ex. 8 at 31-32).

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant's claim in his Motion for Leave to Amend concerning the validity of his obstruction of justice conviction, to the extent that it is even properly before the court, lacks merit and does not demonstrate ineffective assistance of counsel or a denial of due process.

Defendant's Motion for Leave to Amend further asserts, for the first time, that Defendant's appellate counsel, Troy N. Giatras, failed to present relevant claims in his direct appeal.  (ECF No. 170 at 10).  However, this conclusory allegation fails to identify any specific claims Defendant contends should have been raised on appeal and fails to demonstrate how any such claims would have altered the outcome of his appellate proceedings.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant is not entitled to any relief under section 2255 on this basis.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 160), his Motion to Amend and Supplement his Section 2255 Motion (ECF No. 167), and his Motion for Leave to Amend his Section 2255 Motion (ECF No. 170), and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Chambers.

The Clerk is directed to file this Proposed Findings and Recommendations, to mail a copy of the same to Defendant, and to transmit a copy to counsel of record.

February 22, 2019

Dwane L. Tinsley
United States Magistrate Judge